UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 14-CR-20604-LENARD

**UNITED STATES OF AMERICA,**

v.

**KISHA SINGLETARY,**

      **Defendant.**

_____/

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (DE: 58)

Defendant Kisha Singletary, ("Defendant") has filed a motion, *pro se*, asking this Court to reduce her sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (DE: 58). Defendant requests compassionate release on the grounds that defendant has completed more than fifty percent of her sentence, Defendant tested positive for COVID-19 while incarcerated, Defendant's sister has medical issues, and Defendant believes she has been successfully rehabilitated. The United States respectfully opposes the motion and requests that this Court deny the motion without prejudice because Defendant has not exhausted the administrative process required to file the instant motion and has also not met her burden of establishing that a sentence reduction is warranted under the statute.

## BACKGROUND

The Defendant pleaded guilty to the single count in a Superseding Information, charging Defendant with Sex Trafficking of a Minor, in violation of Title 18, United States Code, Section 1591(a)(1) and (b)(2) on October 15, 2014. (DE: 29). At the change of plea hearing, Defendant executed a plea agreement and a stipulated factual proffer. (DE: 31-32).

Prior to sentencing, the United States Office of Probation prepared the Presentence

Investigation Report (PSI) for Defendant. The Defendant received a base offense level of 30, pursuant to USSG § 2G1.3(a)(2); plus two levels for using a computer, pursuant to USSG § 2G1.3(b)(3); and an additional two levels because the offense involved the commission of a sex act, pursuant to USSG § 2G1.3(b)(4)(A). (PSI at ¶¶ 19-21). This resulted in an adjusted offense level of 34, which was reduced by three points for acceptance of responsibility to a total offense level of 31. (Id., ¶¶ 27-29). The Defendant was also found to have a Criminal History Category of III, with four criminal history points. (Id. at ¶ 34). Probation assessed that the Defendant's advisory guideline range was 135-168 months' imprisonment, with a statutory mandatory minimum sentence of ten years' imprisonment. (Id. at ¶ 88).

Defendant filed a motion for a downward departure prior to the sentencing hearing. (DE: 36). At the sentencing hearing on January 6, 2015, the Court sentenced the Defendant to a sentence below the advisory guideline range at 126 months' imprisonment, twenty years' supervised release, and a $100 fine. (DE: 37-38).

Defendant filed a Motion to Vacate Sentence on December 29, 2015 (DE: 46), which the Court denied on March 1, 2016. (DE: 47). Defendant filed a motion for reconsideration of the judgment on June 30, 2020 (DE: 51), which the Court denied on July 15, 2020. (DE: 52). Defendant then filed an emergency motion for immediate release under the Fifth and Eighth Amendment due to the COVID-19 pandemic on July 29, 2020 (DE: 53), which the Court denied on July 30, 2020 (DE: 54). On November 16, 2020, Defendant filed a motion requesting placement in a Residential Reentry Center (DE: 56), which the Court denied on December 1, 2020. (DE: 57).

Defendant has been incarcerated in the United States in this matter since August 14, 2014. The Defendant has currently served approximately eighty-eight (88) months of her 126-month sentence, or approximately seventy percent (70%). According to the Federal Bureau of Prisons

(BOP) website, the Defendant is scheduled to be released on April 19, 2024.

The Defendant is twenty-eight years old, and, as noted in the PSI, Defendant reported no other health conditions other than anemia. (PSI ¶ 58).  In preparing for the government's response, the government obtained the medical records for Defendant from the Bureau of Prisons ("Defendant's Medical Records").  Those records will be filed under seal in a separate filing.  The medical records indicate that Defendant continues to receive treatment for anemia.  The medical records also reflect that Defendant completed has received both doses of the Pfizer COVID-19 vaccine, with the second dose administered on January 29, 2021. (See Medical records at p. 59).

According to the Bureau of Prisons, Defendant has not filed an administrative request with the Warden for compassionate release.  Therefore, Defendant has not yet exhausted the administrative process to file the instant motion.  The Bureau of Prisons also provided Defendant's disciplinary record, attached as Exhibit A, which shows that Defendant has had some disciplinary infractions during this present period of incarceration.

### BOP's Response to the COVID-19 Pandemic

As the Court is aware, from the moment the pandemic began, the Bureau of Prisons (BOP) made extensive changes to its operations, based on a plan that was prepared over many years, and refined in early 2020 in consultation with the Centers for Disease Control and the World Health Organization. Those efforts continue.

The government recognizes that the COVID-19 case rate at a particular institution may change at any time. We therefore focus primarily on considerations specific to the defendant. But BOP's success at many institutions in limiting the spread of the virus, and in stemming outbreaks when they occur, provides an important backdrop for the defendant's motion.

BOP's "action plan" is described in detail at www.bop.gov/coronavirus/. As part of that plan, all newly arriving inmates are quarantined and not released into the general population until 14 days have passed and the inmate has tested negative; inmate movement within an institution is

restricted in order to promote social distancing; mask wearing by inmates and staff is required; all facility staff are screened for symptoms daily; social visiting has been suspended at nearly all institutions; and access by other outsiders is restricted to only those performing essential services, who are also screened before entry.

In addition, acting under the authority granted in the CARES Act, BOP has transferred many thousands of inmates to home confinement, focusing on nonviolent offenders who have served the majority of their sentences. This initiative, combined with the reduced number of new arrivals during the pandemic and the ordinary release of prisoners upon completion of their sentences, has led to a dramatic decrease in the total BOP population, which in turn has increased opportunities for social distancing and reduced the strain on BOP resources. The total BOP population, which was approximately 170,000 at the beginning of the pandemic, is now more than 10% lower, at the lowest level in decades.

When an outbreak does occur, any infected inmate is immediately quarantined, and all contacts (including entire housing units if warranted) are tested and quarantined as necessary, until all contacts return at least two negative tests in a two-week period.

All of these strenuous efforts have been fruitful. To be sure, there is no way to stop this virus short of widespread vaccination, and inmates inevitably will be infected and some may succumb, just as in the population at large. But it is notable that the rate of deaths in federal prisons as a whole has been lower than that in the general U.S. population, a notable achievement given the known risks of viral spread in a congregate prison setting.

BOP is working with the CDC and the federal government's COVID-19 Vaccine/Therapeutics Operation (formerly known as Operation Warp Speed) to ensure that BOP receives the COVID-19 vaccine as it becomes available. As of the week of February 8, 2021, doses of the vaccine had been delivered to every BOP institution.

BOP offered the vaccine first to full-time staff because staff members—who come and go between the facility and the community—present a more likely vector for COVID-19 transmission into an institution. As of this time, vaccines have been administered to all willing staff members,

and BOP continues to encourage staff members who have not accepted a vaccine to do so. (Staff members may also obtain and have obtained vaccinations from other providers in the community.)

BOP is now in the process of offering vaccines to inmates, proceeding based on priority of need in accordance with CDC guidelines. In general, the vaccine is offered first to inmates over 75 years of age; then to inmates over 65 years of age; then to inmates of any age who present a condition identified by the CDC as presenting a risk of severe COVID-19 disease; and then to all inmates. As of this time, BOP has administered a total of xxx doses to staff and inmates nationwide. As of mid-April 2021, BOP estimated that if it continued to receive doses at the then-current pace it will have offered a vaccine to every inmate in its custody by June 1, 2021. As of December 14, 2021, the total number of doses administered by the BOP was 269,778. See www.bop.gov. As a court recently observed, "Since the vaccines became available, the Bureau of Prisons diligently and efficiently administered the doses allocated to it, leading all jurisdictions and Federal entities in its vaccine utilization rate." *United States v. Roper*, 2021 WL 963583, at *3 (E.D. Pa. Mar. 15, 2021) (Kearney, J.) (footnote omitted).

The clinical guidance provided to BOP health services professionals is available at https://www.bop.gov/resources/pdfs/covid19_vaccine_guidance_20210311.pdf. The latest information on BOP's vaccination efforts, including the number of completed vaccinations at each institution, is available at https://www.bop.gov/coronavirus/, and is updated every weekday.

## Legal Framework

Under 18 U.S.C. § 3582(c)(1)(A), this Court may, in certain circumstances, grant a defendant's motion to reduce his or her term of imprisonment. Before filing that motion, however, the defendant must first request that BOP file such a motion on his or her behalf. § 3582(c)(1)(A). A court may grant the defendant's own motion for a reduction in her sentence only if the motion was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed

"from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

If that exhaustion requirement is met, a court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a policy statement addressing reduction of sentences under § 3582(c)(1)(A). As relevant here, the policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." USSG § 1B1.13.[1]

The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." USSG § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is:

>  (I) suffering from a serious physical or medical condition,
>  
>  (II) suffering from a serious functional or cognitive impairment, or
>  
>  (III) experiencing deteriorating physical or mental health because of the aging process,

---

[1] The policy statement refers only to motions filed by the BOP Director. That is because the policy statement was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions under § 3582(c). *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; *cf.* 18 U.S.C. § 3582(c) (2012). In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the policy statement applies to motions filed by defendants as well.

> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

USSG § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. USSG § 1B1.13, cmt. n.1(B)-(C). Finally, the note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." USSG § 1B1.13, cmt. n.1(D).

## ARGUMENT

This Court should deny Defendant's motion for a reduction in sentence without prejudice because Defendant has failed to exhaust administrative remedies. Should the Court reach the merits of the motion, the Court should deny it with prejudice on either of two independently sufficient grounds. First, Defendant has not established that "extraordinary and compelling reasons" support a sentence reduction; second, Defendant has not met her burden to show that a reduction is warranted in light of the danger that Defendant would pose to the community and the relevant § 3553(a) factors.

### I. Defendant Has Not Exhausted Administrative Remedies.

This Court lacks authority to act on Defendant's motion for a sentence reduction at this time. As explained above, § 3582(c) requires that a request for a sentence reduction be presented first to BOP for its consideration; only after 30 days have passed, or the defendant has exhausted all administrative rights to appeal the BOP's failure to move on the defendant's behalf, may a defendant move for a sentence reduction in court. Once raised, that restriction is mandatory, and it continues to serve an important function during the present crisis. The government is very mindful of the concerns created by COVID-19, and BOP is making its best effort both to protect the inmate population and to address the unique circumstances of individual inmates.

Section 3582(c) provides that a court may not modify a term of imprisonment once it has been imposed except "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the

Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, [the sentencing court] may reduce the term of imprisonment . . . ." § 3582(c)(1)(A).

Consistent with that principle of finality, § 3582(c) provides that a court generally "may not modify a term of imprisonment once it has been imposed," except in three circumstances: (i) upon a motion for reduction in sentence under § 3582(c)(1)(A), such as that presented by the defendant; (ii) "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure," § 3582(c)(1)(B); and (iii) where the defendant was sentenced "based on" a retroactively lowered sentencing range, § 3582(c)(2).

Given the plain language and purpose of the statute, the requirements for filing a sentence-reduction motion—including the requirement that a defendant exhaust administrative remedies or wait 30 days before moving in court for a reduction—are properly viewed as mandatory. Section 3582(c) states that a "court may not modify" a term of imprisonment except in enumerated circumstances. 18 U.S.C. § 3582(c). It thus "speak[s] to the power of the court rather than to the rights or obligations of the parties," *Landgraf v. USI Film Prods.*, 511 U.S. 244, 274 (1994) (internal quotation marks omitted), delineating "when, and under what conditions," a court may exercise its "'adjudicatory authority,'" *Bowles v. Russell*, 551 U.S. 205, 212-13 (2007) (quoting *Eberhart v. United States*, 546 U.S. 12, 16 (2005) (per curiam)). That conclusion is reinforced by the historical powerlessness of the courts to modify a sentence after the expiration of the term at which it was entered. *See United States v. Mayer*, 235 U.S. 55, 67-69 (1914); *United States v. Welty*, 426 F.2d 615, 617-618 & n.8 (3d Cir. 1970). Section 3582(c) accordingly has been understood as conferring the authority that previously was lacking by providing express statutory authorization to modify otherwise final sentences.

The exhaustion requirement of § 3582(c)(1)(A) is a mandatory claim-processing rule and must be enforced if a party "properly raise[s]" it. *Eberhart*, 546 U.S. at 19 (holding that Fed. R. Crim. P. 33, which permits a defendant to move for a new trial within 14 days of the verdict, is a nonjurisdictional but mandatory claim-processing rule). The government raises the rule here, and

it must be enforced. *See, e.g., United States v. Taylor*, 778 F.3d 667, 670 (7th Cir. 2015) (recognizing that even if a court has the "power to adjudicate" a motion under § 3582(c)(2), it may lack "authority to *grant* a motion . . . because the statutory criteria are not met") (emphasis in original).

The requirement of a 30-day period to afford BOP the initial review of the defendant's request therefore cannot be excused. Virtually every other reported district court decision agrees with *Raia* and the government here that the 30-day requirement must be enforced. Some courts call the exhaustion requirement "jurisdictional" and others a "statutory case-processing rule." Regardless of the terminology, if raised by the government, a prisoner's failure to exhaust or allow the expiration of the 30-day period, leaves the court without the power to grant the prisoner's motion. *See, e.g.*, *United States v. Zywotko*, 2020 WL 1492900 (M.D. Fla. Mar. 27, 2020).

While Congress indisputably acted in the First Step Act to expand the availability of compassionate release, it expressly imposed on inmates the requirement of initial resort to administrative remedies. And this is for good reason: BOP conducts an extensive assessment for such requests. *See* 28 C.F.R. § 571.62(a); BOP Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g), *available at* https://www.bop.gov/policy/progstat/5050_050_EN.pdf. As the Procedures reflect, the BOP completes a diligent and thorough review, with considerable expertise concerning both the inmate and the conditions of confinement. Its assessment will always be of value to the parties and the Court.

That is especially true during the current COVID situation. As explained above, BOP must balance a host of considerations in deciding whether to release an inmate to recommend a reduction in an inmate's sentence or grant the inmate home confinement—not only the health of the inmate and BOP staff, but also the safety of the public. BOP is best positioned to determine the proper treatment of the inmate population as a whole, taking into account both individual considerations in light of on an inmate's background and medical history and more general considerations regarding the conditions and needs at particular facilities. The provision of § 3582(c)(1)(A)

prioritizing administrative review therefore makes sense not only in the ordinary case, but also at this perilous time. Accordingly, Defendant's motion should be denied without prejudice to refiling once she has exhausted administrative remedies.

## II. The Motion Should Be Denied Because Defendant Has Failed to Present Any "Extraordinary and Compelling Reasons" Warranting a Sentence Reduction.

Defendant's request for a sentence reduction should be denied because Defendant has not demonstrated "extraordinary and compelling reasons" warranting release. As explained above, under the relevant provision of § 3582(c), a court can grant a sentence reduction only if it determines that "extraordinary and compelling reasons" justify the reduction and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement defines "extraordinary and compelling reasons" to include, as relevant here, certain specified categories of medical conditions. USSG § 1B1.13, cmt. n.1(A).

For that reason, to state a cognizable basis for a sentence reduction based on a medical condition, a defendant first must establish that his condition falls within one of the categories listed in the policy statement. Those categories include, as particularly relevant here, (i) any terminal illness, and (ii) any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG 1B1.13, cmt. n.1(A). If a defendant's medical condition does not fall within one of the categories specified in the application note (and no other part of the application note applies), his or her motion must be denied.

If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons," if that inmate has not been fully vaccinated. Under these circumstances, a chronic condition (i.e., one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish the ability of the defendant to provide self-care within the environment of a correctional facility,"

10

even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. U.S.S.G. §1B1.13, cmt. n.1(A)(ii)(I). But as part of its analysis of the totality of circumstances, the Court should consider whether the inmate is more likely to contract COVID-19 if he is released than if he remains incarcerated. That will typically depend on the inmate's proposed release plans and whether a known outbreak has occurred at his institution.

In the instant case, Defendant does not have a medical condition that elevates her risk of having severe illness due to COVID-19. As described in the PSI and her medical records, Defendant is treated for iron anemia, which the CDC does not list as a preexisting condition that causes a higher risk of severe illness from COVID-19. Additionally, Defendant is fully vaccinated with the Pfizer vaccine. Defendant received both doses of the Pfizer vaccine, with the last does occurring in January 2021. See Medical Records, p. 59. Various studies continue to confirm the efficacy of the vaccines. The CDC recently reported the effectiveness of the Pfizer and Moderna vaccines in preventing infection during the same period, and concluded that its extensive data "reinforce CDC's recommendation of full 2-dose immunization with mRNA vaccines. COVID-19 vaccination is recommended for all eligible persons…." "Interim Estimates of Vaccine Effectiveness," https://www.cdc.gov/mmwr/volumes/70/wr/mm7013e3.htm (Mar. 29, 2021).

Thus, the defendant has provided effective "self-care" against the virus, and she does not present any extraordinary and compelling reason allowing compassionate release. As one court recently summarized:

> Here, Defendant is not at high risk of contracting severe COVID-19 because Defendant will have received both does of the Pfizer vaccine by the time he would be released. According to clinical trials published on the CDC's website, the Pfizer vaccine was 95% effective at preventing COVID-19 in people who did not have a previous infection. More importantly for purposes of this motion, clinical trials have shown that the Pfizer vaccine is 100% effective at preventing severe disease. Therefore, because Defendant will be at little-to-no risk of severe COVID-19 shortly after receiving his second Pfizer dose, there are no "extraordinary and compelling reasons" justifying a

11

compassionate release in this case. *See United States v. Miller*, No. 13-20928, 2021 WL 1115863, at *2 (E.D. Mich. Mar. 24, 2021) ("The court is aware of no scientifically derived evidence showing that severe complications or death from COVID-19 is likely, or even possible, after an individual has received a full vaccination regimen. Over forty million individuals have been fully vaccinated in the United States, and the court does not know of a single confirmed death of a fully vaccinated individual from COVID-19.").

*United States v. Groom*, 2021 WL 1220225, at *2 (S.D. Ohio Apr. 1, 2021) (Sargus, J.).

Recent decisions overwhelmingly agree with this assessment. *See, e.g.*, *United States v. Lipscomb*, 2021 WL 734519, at *2 (M.D. Fla. Feb. 25, 2021) (Chappell, J.) (inmate received both doses; "What's more, this demolishes Lipscomb's conclusory contention BOP is not taking adequate precautions. Currently, tens—if not hundreds—of millions of Americans are scurrying to figure out how to get a vaccine. Yet Lipscomb already received both doses. This does not suggest BOP is taking COVID-19 lightly or not protecting Lipscomb.").

Moreover, recent variants, such as the Delta variant, the Omicron variant, and other potential variants of COVID-19 do not rise to the level of an extraordinary and compelling reason. According to the CDC website, fully vaccinated individuals are less likely to develop symptoms, and even when they do, those symptoms and illnesses are less likely to be severe or require hospitalization. See www.cdc.gov. Furthermore, the FDA has approved booster shots for all individuals who have been fully vaccinated, and these booster shots are believed to raise the immunity level and prevent serious symptoms and illness from COVID variants.

Defendant has not provided any evidence that her conditions are deteriorating or that she is unable to provide self-care. The Defendant has not met her burden of establishing that she would be safer from COVID-19 if released from BOP custody.

The relevant policy statements issued by the Sentencing Commission are set forth in Application Note 1 to the U.S. Sentencing Guidelines Manual, which explains the circumstances in which "extraordinary and compelling reasons" exist. U.S.S.G. 1B1.13, app. n. 1. Here, Defendant is not suffering from a terminal illness or from a condition or cognitive impairment that

substantially diminishes his ability to provide self-care (Application Note 1(A)); she is not over 65 years of age, and she has not served at least 10 years or 75% of her term of imprisonment (Application Note 1(B)); she is not subject to unique family circumstances that require her release (Application Note 1(C)); and the BOP has not determined that alternative compelling reasons exist with respect to Defendant (Application Note 1(D)).  Accordingly, relief under 3582(c)(1)(A)(i) is not appropriate. *See Rodriguez-Orejuela,* 2020 WL 2050434, at *7; *See also U.S. v. Israel*, 95-00314-CR-JAL, 2020 WL 3893987 (S.D. Fla. July 10, 2020) (motion denied where defendant was seventy-six years old having suffered a heart attack and previously had open-heart surgery); *United States v. Stallings*, 05-80092-CR-BB, 2020 WL 3415453 (S.D. Fla. June 22, 2020); *United States v. Bueno-Sierra,* 93-00567-CR-BB, 2020 WL 2526501 (S.D. Fla. May 17, 2020)(motion denied where defendant suffered from Type 2 diabetes and hypertension); *United States v. Alvarez,* 19-20343-CR-BB, 2020 WL 2572519 (S.D. Fla. May 21, 2020)(motion denied where defendant suffered from asthma and chronic bronchitis); *United States v. Ewell,* 18-60185-CR-BB, DE: 197, (S.D.Fla December 1, 2020)(motion denied where defendant suffered from hypertension, cardiomyopathy, had an implanted pacemaker and defibrillator, and abnormalities of his heartbeat.)

Defendant further makes a statement that her older sister is in and out of the hospital on a regular basis.  However, Defendant does not provide any evidence or medical records of her sister that demonstrate what the sister's medical conditions are that require hospital visits.  Defendant also provides no details as to why this would rise to an extraordinary and compelling reason for Defendant to be released.

For these reasons, Defendant has failed to establish an "extraordinary and compelling reason" for a sentence reduction under § 3582(c). The motion should be denied.

### III. The § 3553(A) Factors Strongly Weigh Against Defendant's Release.

Alternatively, Defendant's request for a sentence reduction should be denied because Defendant has failed to demonstrate that she merits release under the § 3553(a) factors.

13

At the present time, it is apparent that, but for the COVID-19 pandemic, Defendant would present no basis for compassionate release. The Defendant is fully vaccinated, and her motion is based merely on statements that she tested positive for COVID-19 once, her sister is in and out of the hospital, and she feels she is fully rehabilitated. Under the applicable policy statement, this Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2). Additionally, this Court must consider the § 3553(a) factors, as "applicable," as part of its analysis. *See* § 3582(c)(1)(A).

Pursuant to the factors enumerated under 18 U.S.C. § 3553(a), the first factor is the nature and circumstances of the offense and the history and characteristics of the Defendant. The Defendant was convicted, after a plea of guilty, of sex trafficking of a minor. Although the Defendant was twenty-years' old at the time, the nature and circumstances of the offense certainly warranted a 126-month sentence of imprisonment.

The second factor is the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational training, medical care, or other correctional treatment. Certainly, this Court at sentencing found that participating in the sex trafficking of a minor was serious, and a sentence of 126 months' imprisonment was deemed as appropriate punishment for Defendant's relevant conduct.

None of this has changed, as Defendant is still under thirty years' old and has no new health conditions that were not known at sentencing. The medical records do not reflect that Defendant's health is declining. Defendant has provided no change in circumstances to warrant a reduction in this case. Moreover, the fact that Defendant is fully vaccinated and could be eligible for a booster shot further cuts against Defendant's arguments.

Accordingly, in light of Defendant's record and the totality of relevant circumstances, this Court should deny the motion for a sentence reduction.

## CONCLUSION

WHEREFORE, the government submits that Defendant's Motion for a sentence reduction (DE: 58) should be DENIED at this time.

                              Respectfully submitted,

                              JUAN ANTONIO GONZALEZ
                              UNITED STATES ATTORNEY

By:   */s/ Brian Dobbins*
       Brian Dobbins
       Assistant United States Attorney
       Court No. A5501182
       99 N.E. 4th Street
       Miami, FL 33132
       Tel# (305) 961-9304
       Fax: (305) 536-4676
       Brian.Dobbins@usdoj.gov

**CERTIFICATE OF SERVICE**

    **I HEREBY CERTIFY** that on December 14, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that I mailed a copy to:

Mr. Kisha Singletary, *pro se*
Reg. # 06635-104
FCI-Tallahassee
P.O. Box 5000
Tallahassee, FL 32314

                                                  */s/ Brian Dobbins*
                                                  Brian Dobbins
                                                  Assistant United States Attorney